UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :       CRIMINAL NO. 3:01CR262 (RNC)

vs.                            :

RALPH F. VITALE                :       NOVEMBER 27, 2006

### DEFENDANT'S MEMORANDUM IN AID OF RE-SENTENCING

The defendant, Ralph Vitale, by and through counsel, submits this memorandum of law as an aid to the court for purposes of re-sentencing after remand from the Second Circuit following the defendant's appeal. United States v. Vitale, 459 F.3d 190 (2d Cir. 2006), *citing* United States v. Fagans, 406 F.3d 138, 140-41 (2d Cir. 2005). The defendant asserts that in light of more recent Supreme Court precedent declaring the U.S. Sentencing Guidelines ("USSG") unconstitutional, and with the absence of jury findings on issues of sentencing enhancements, his guidelines range is actually more in line with what the defendant argued in his August, 2004 memorandum and orally before the August 16, 2004 sentencing hearing. Therefore, the USSG range set forth in the 2004 Pre-Sentence Report is incorrect and must be recalculated. In any event, the state of the defendant's poor health and the inadequate medical treatment that has been provided to Mr. Vitale while incarcerated, supports a non-guidelines sentence that is below the guidelines range. [1]

Mr. Vitale asserts herein that the court should consider several factors in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Mr. Vitale respectfully requests that the Court reconsider arguments raised by counsel in 2004 and now conclude that the now-advisory

---

[1] The defendant is disappointed that the Probation Officer made little, if any, efforts (at least to the undersigned's knowledge) to obtain copies of medical records from Bureau of Prison medical staff at Fort Dix, where the defendant was incarcerated for much of the last two years. Nevertheless, substantial BOP medical records have subsequently been obtained and reviewed by counsel and will be provided to the court at the time of sentencing, as necessary to present the court with an accurate picture of Mr. Vitale's current medical condition.

sentencing guidelines range is actually lower than what the court found in 2004. In addition, he argues that the court should consider several important mitigating circumstances in fashioning a sentence that is below the recommended Sentencing Guidelines, due to his advanced age and poor physical health. The court is also asked to consider the sentences given to co-defendants.

The defendant previously filed objections, on sixth amendment grounds, to most of the alleged "offense conduct" set forth in ¶¶ 47 through 63 of the PSR. The jury never was asked nor required to make findings on these matters, which resulted in unwarranted proposed enhancements. Furthermore, the defendant objected to the sentencing range in ¶ 90 and the estimated "total loss" in ¶ 98, that apparently includes the Endura-Jet loan.

To refresh the court's memory concerning the objections raised by the defendant both in writing and orally before the imposition of sentence in August, 2004, the defendant argued – unsuccessfully – that Blakely v. Washington, 542 U.S. 296 (2004) required the court to calculate a USSG range utilizing Offense Level 6, which was the base offense level for Bank Fraud then in existence between October, 1995 and mid-1996. Nevertheless, this court increased the base level pursuant to USSG §2F1.1(k) by 10 levels, concluding that the defendant was not only responsible for the full face value of the five $100,000 loans in the indictment, even though the actual losses to Fleet Bank were much less, but also for losses under a sixth loan to another company known as Endura-Jet, that was not included in the indictment at all. The court also accepted the Probation Officer's recommended enhancements of two levels for more than minimal planning, under USSG § 2B1.1(b)(4)(A) and two more levels for the defendant's purported leadership or supervisory role in the bank fraud scheme under USSG § 3B1.1. Of course, none of these enhancements were presented to the jury and, therefore, the judicial "findings" against the defendant unconstitutionally increased his sentence considerably. In accordance with the Second Circuit opinion in Vitale, supra, the defendant's sentence must be recalculated.

    A.        **SENTENCING UNDER UNITED STATES V. BOOKER**

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holdings in Blakely and Apprendi v. New Jersey, 530 U. S. 466 (2000) apply equally to the U.S. Sentencing

Guidelines.  United States v. Booker, 543 U.S. 220, 244 (2005).  Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court.  Id. at 235.  Accordingly, reaffirming its holding in Apprendi, the Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  Id. at 244.[2]

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that made the Sentencing Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding.  Booker, 543 U.S. at 244.  Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory."  Id. at 246.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)."  Booker, 543 U.S. at 246-47.  Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence

---

[2] It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998).  The continued vitality of this case and the exception it created has been called in to question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 544 U.S. 13 (2005).  Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records.  As Justice Thomas notes, moreover, five justices agreed that Almendarez-Torres was wrongly decided.  544 U.S. at 27-28 (Thomas, J., concurring).

sufficient, but not greater than necessary . . ..." Section 3553(a) states that such purposes are:

- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, <u>medical care</u>, or other correctional treatment in the most effective manner.

Thus, "medical care" is an express statutory purpose of sentencing, as is recidivism. In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

- 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1));
- 2) "the kinds of sentences available" (§ 3553(a)(3));
- 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)); and
- 4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate <u>means</u> of promoting correction and rehabilitation." (emphasis added). Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States <u>may</u> receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. <i>See</i> U.S.S.G. § 5H1. <u>See also</u> <u>United States v. Nellum</u>, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb 3, 2005) (Simon, J.) (taking into account fact that defendant, would, upon his release from prison, have a very low

4

likelihood of recidivism due to his age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May (2004)); United States v. Naylor, 359 F. Supp. 2d 521 (W.D. Va. 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses and noting that in Roper v. Simmons. 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).  The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353 (a) factors, many of which the guidelines either reject or ignore."  United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005) (Adelman, J.).  As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker."  United States v. Jaber, 362 F. Supp.2d 365 (D. Mass. 2005) (Gertner, J.).  See also, United States v. Ameline, 400 F. 3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining and appropriate individualized sentence"), reh'g en banc granted, 401 F. 3d 1007 (9th Cir. 2005).  Justice Scalia explained this issue in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range.  If the majority thought otherwise - if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed - its opinion would surely say so.

Booker, 543 U.S. at 304-06 (Scalia, J., dissenting in part).  Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so.  The remedial majority clearly understood that giving any special weight to the guideline range

relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553 (a) factors, not just guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. Where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F. 2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

The Probation Officer has prepared a one-page supplemental report that makes no efforts to recalculate the defendant's guidelines range in light of Booker and Fanfan. In 2004, the PSR calculated Mr. Vitale's Guidelines by assuming an offense level of 20, and a criminal history category of III (because of Mr. Vitale's two prior federal convictions). As a result, the Probation Officer suggested a Guidelines imprisonment range of 41 to 51 months. The court will recall that the defendant strongly disagreed with the calculation, based upon the unwarranted addition of offense characteristics that were not determined by the jury, and, therefore, could not be reconciled with the holding of Blakely. These included inflating the loss to include a loan not in the indictment, suggesting a scheme involving more than minimal planning, and an enhancement for the defendant's role in the offense, despite his sixth grade education, and lack of ability to initiate any of the loans himself. Therefore, the defendant submits, again, that he must be sentenced in accordance with the base offense level for Bank Fraud, which, at the time, was Level 6.

**B.     APPLICATION OF SENTENCING FACTORS TO THE FACTS OF THIS CASE**

The following constitutes the sentencing factors that a judge must consider:

1.    *The Need for the Sentence Imposed To Promote Certain Statutory Objectives:*

(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;

  ©) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

2. *The Kinds of Sentences Available*

  In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553 (b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, supra, 543 U.S. at 244. This renders the sentencing guidelines advisory. Id. 18 U.S.C. §§ 3551, 3559, 3561, 3571, 3581 provide this Court with the types of available sentences based upon defendant's conviction.

3. *The Sentencing Range Established by the Sentencing Commission.*

  The offense level under provisions of the Guidelines is 6, as stated in paragraph 60 of the PSR, involving bank fraud. Inclusion of the Endura-Jet and Bell Auto & Marine loans is clearly improper under Booker**.** Moreover, the jury made no finding as to total loss. Since much of the money was never spent, and remained in a bank account that was frozen and returned to the bank, then the total "actual loss", even if properly considered is $366,750; not $700,000.00 as listed in ¶ 61 of the PSR. This would arguably result in an increase of 9 levels under former USSG § 2F1.1(b)(J), if the jury had been asked to make such a finding.

  To reiterate, the proper offense level under the guidelines is 6, with a concomitant guidelines range of 2 to 8 months based upon Criminal History Category III.

  **C.** **The Defendant's Physical Disabilities Warrant a Non-Guidelines Sentence**

  In 2004, the defendant argued that a downward departure under the mandatory guidelines regimen was warranted due to the defendant's heart and diabetes problems and his advanced age (68), at the time of the trial. These additional claims, in turn, were rejected by the court because of certain language in USSG § 5H1.4 that states that a defendant's physical condition is "not ordinarily relevant" as a grounds for departure; thus making these discouraged, but not prohibited, grounds for departure. *See,* Koon v. United States, 518 U.S. 81 (1996). While such "discouraged" factors required a high level of justification to survive scrutiny under mandatory guidelines, their application is now entirely within the district court's discretion, provided that

their application is "reasonable" in a particular case. Yet, even as a discouraged Guidelines factor, if evidence of poor health is present to "an exceptional degree," a sentencing court may still rely upon it to support mitigation. Id.

Moreover, since the Guidelines are now advisory, this court may, indeed, look to the defendant's health as a basis for sentencing below the Guidelines range. As the Second Circuit noted in a related context in United States v. Brady, 417 F.3d 326 (2d Cir. 2005), "the district court need not impose a Guidelines sentence, and may, if doing so would be reasonable, lower the sentence below the Guidelines range even when a downward departure is unavailable." While characteristics such as mental and emotional conditions, were not "ordinarily relevant," under the Guidelines, the Brady Court held that "by negative implication . . . there are indeed certain situations where a person's mental and emotional conditions may be taken into account in granting a downward departure." Id. By inference, the same "negative implication" rule would apply to a defendant's physical condition, including age and poor health.

In United States v. Spigner, 416 F.3d 708, 712 (8th Cir. 2005), the Eighth Circuit held that Section 3553(a) actually *requires* the court to impose a sentence reflective of the defendant's medical care needs, under the advisory system after Booker. The court found that kidney disease and the general condition of the defendant's health were proper considerations for a sentence below the Guidelines range. Thus, according to the Spigner court, even if a defendant did not qualify for a downward departure under USSG § 5H1.4, this did not foreclose a sentence lower than the Guidelines based on the defendant's poor health. *Accord*, United States v. Ryder, 414 F.3d 908 (8th Cir. 2005). *See, also*, United States v. Pineyro, 372 F.Supp. 2d 133 (D. Mass. 2005)(Gertner, J.) (Sentence below Guidelines appropriate where defendant suffered from heterotopic ossification after a severe car accident); United States v. Ranum, supra, 353 F.Supp.2d at 986-87 (Guidelines prohibitions against consideration of certain individual characteristics of a defendant – including physical condition – "cannot be squared with" § 3553(a)(I) requirement that sentencing court consider "history and characteristics" of defendant).

Because the defendant suffers from advanced diabetes and cardiac hypertension, along

with other ailments, the defendant asks the court to consider the total of these infirmities as a basis for imposing a non-Guidelines sentence of no more than time already served.

### D. Mr. Vitale's Low Likelihood of Recidivism Due to Age

Under 18 U.S.C. § 3553(a)(2), the Court must consider the need for the sentence imposed to "protect the public from further crimes of the defendant" and "to afford adequate deterrence to criminal conduct." Mr. Vitale's extremely low likelihood of recidivism is relevant to both objectives in sentencing.

Mr. Vitale was 68 at the time of trial. He is now close to 71 years old. A 2004 study by the Sentencing Commission found a strong correlation between age and recidivism. See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines (2004), http://www..ussc.gov/publicat/Recidivism_General.pdf. The study found that "[r]ecidivism rates decline relatively consistently as age increases." Id. at 12. In particular, "[a]mong all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent." Id. at 12. The report notes also that although age was not incorporated into Guideline calculations, age is a legally permissible offender characteristic and the Guidelines left open the possibility of later consideration of this factor. Id at 16. Mr. Vitale's prior convictions occurred before his 50th birthday.

Numerous courts, post-Booker, have considered the effect of a defendant's age on recidivism when tailoring a sentence. See, e.g., United States v. Lucania, 379 F. Supp. 2d 288, 297 (E.D.N.Y 2005) ("Post-Booker courts have noted that recidivism is markedly lower for older defendants.... I will [] take into account the defendants' ages in fashioning a non-Guidelines sentence."); United States v. Carmona-Rodriguez, No. 04CR667, 2005 WL 840464, at*4 (S.D.N.Y. April 11, 2005) (imposing a sentence below Guideline range on 55 year old defendant "in view of the low probability that [defendant] will recidivate"); United Sates v. Phillips, 368 F. Supp. 2d 1259, 1260 (D.N.M. 2005) ("Since Booker now requires consideration of all the factors in 18 U.S.C. § 3553 in reaching a just sentence, I also considered Mr. Phillips' relatively advanced age 58, in calculating this sentence."); Simon v. United States, 361 F. Supp. 2d 35

(E.D.N.Y. 2005) ("Under the Guidelines, age was not normally relevant to sentencing. Post-Booker, however, at least one Court has noted that recidivism drops substantially with age. The Guidelines' failure to account for this phenomenon renders it an imperfect measure of how well a sentence protects the public from further crimes of the defendant." (Citations omitted)); United States v. Nellum, No. 2:04-CR-30-PS, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) ("The positive correlation between age and recidivism is impossible to deny.. [U]nder § 3553(a)(2)( C), age of the offender is plainly relevant to the issue of 'protect[ing] the public from further crimes of the defendant.").

Of course, any Guidelines range in this case is calculated without consideration of Mr. Vitale's advanced age. In arriving at a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing, this Court should consider the strong correlation between age and recidivism rates, and consider a sentence below the relevant Guidelines range for Mr. Vitale.

### E.     CONCLUSION

Mr. Vitale has remained incarcerated since his designation to Fort Dix in 2004. He has suffered from severe medical problems and insufficient medical care since that time. The court is asked to consider a sentence of time served. Such a sentence is appropriate in this case after consideration of the defendant's personal history and characteristics, including his age and poor health. Such a sentence is sufficient but not greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a); namely: (1) retribution; (2) deterrence; (3) incapacitation; and (4) rehabilitation. See 18 U.S.C. § 3553(a)(2). A more severe sentence is unnecessary to deter future criminal conduct by Mr. Vitale or to protect the public from future crimes by him. In this regard, the defendant asks the court to consider that both Mr. Trantino and Mr. Hoblin, who were more sophisticated than him, received substantially smaller sentences.

In the alternative, if the Court determines that some form of further restriction of liberty is appropriate, Mr. Vitale urges the Court to impose a sentence of home detention for six months. See U.S.S.G. § 5B1.1, cmt. n.1(b). Such a sentence would involve a variance from the Guidelines, but allow him to continue with his medical care near his home. Mr. Vitale's

deteriorating health problems weigh heavily against imposing a further term of imprisonment. See 18 U.S.C. §§ 3553(a)(2)(D) & 3553(a)(7); United States v. Coleman, 370 F. Supp. 2d 661, 681 (S.D. Ohio 2005). Moreover, as is explained above, an additional period of imprisonment is greater than what is needed to serve the other purposes of sentencing.

DEFENDANT – RALPH VITALE

By:   /s/ Jon L. Schoenhorn
     Jon L. Schoenhorn, Esq.
     Schoenhorn & Associates
     97 Oak Street, Hartford, CT 06106
     Tel. (860) 278-3500
     Fax: (860) 278-6393
     Fed. Bar No. ct00119
     His Attorney

## CERTIFICATION

This is to certify that a copy of the foregoing was hand delivered to the following counsel of record this 27th day of November 2006:

Calvin B. Kurimai, Esquire
Assistant United States Attorney
450 Main Street, Room 328
Hartford, CT 06103

     /s/ Jon L. Schoenhorn
     Jon L. Schoenhorn, Esq.

A:\Vitale-SentencingMemo2.wpd